**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Darla Patton fka Darla Dolginoff | : | Civil Action No.: 303CV01034 |
| | : | (AVC) |
| vs. | : | |
| | : | |
| James Cusano | : | March 7, 2005 |

**DEFENDANT'S OBJECTON TO**
**PLAINTIFF'S MOTION FOR NEW TRIAL**

**I.    Introduction**

On February 23, 2005, the plaintiff, Darla Patton fka Darla Dolginoff, hereinafter "Ms. Patton" filed a Motion for New Trial pursuant to Federal Rules of Civil Procedure 59(a). In her motion, the plaintiff, Ms. Patton requests a new trial because she believes that the jury's verdict in favor of the defendant, James Cusano amounts to a miscarriage of justice.

Specifically, Ms. Patton appears to be claiming that the jury's conclusion that the defendant was not negligent "and/or that the [plaintiff] did not suffer <u>any injury</u> amounts to a miscarriage of justice." [1]

It is the defendant, James Cusano's position that the jury's verdict is not a miscarriage of justice or egregious. <u>DLC Mgmt. Corp. v. Town of Hyde Park,</u> 163 F.3d 124, 133 (2nd Cir. (N.Y.),1998).

1

## II.     **Discussion**

A. Standard of Review

Rule 59(a) of the Federal Rules of Civil Procedure provides: "A new trial may be granted ... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a).  Generally, a motion for a new trial should be granted when the trial court concludes that "the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." De Falco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001) (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 911 (2d Cir.1997)).  "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir.1998).

> The standards governing a district court's consideration of a Rule 59 motion for a new trial on the grounds that the verdict was against the weight of the evidence differs in two significant ways from the standards governing a Rule 50 motion for judgment as a matter of law.  Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.... **A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is "egregious."  ... Accordingly, a court should rarely disturb a jury's evaluation of a witness's credibility**. Id. at 133-34 (internal citations omitted).

Sabir v. Jowett, 214 F.Supp.2d 226, 244 (D.Conn., 2002)(emphasis added).

---

[1] Motion for New Trial dated February 23, 2005, p. 4.

The Second Circuit commenting on Rule 59 has further stated:

>…for a district court to order a new trial under Rule 59(a), it must conclude that "**the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice,' " i.e., it must view the jury's verdict as "against the weight of the evidence.**" *Id.* at 133 (quoting *Song v. Ives Labs., Inc.,* 957 F.2d 1041, 1047 (2d Cir.1992) (internal citations omitted)).

Manley v. Ambase Corp., 337 F.3rd 237(2nd Cir. 2003)

B. Analysis

**1. The Jury's Verdict is Not a Miscarriage of Justice or Against the Weight of the Evidence or Egregious Because the Jury Could Reasonably have Concluded that the Subject Incident was Not the Proximate Cause of the Plaintiff's Injuries.**

The court is well aware that after over four hours of deliberation the jury answered "No" to the Verdict Form Negligence Liability Question, which read:

> Has the plaintiff, Darla Patton, proven by a preponderance of the evidence that the defendant, James Cusano, was negligent, and that his negligence was the legal or proximate cause of the injury to the plaintiff?

It is well established in Nevada, as set forth in the court's CHARGE TO THE JURY, that in order to recover damages in a Negligence action the plaintiff had to prove that the defendant was negligent and that the negligence was the proximate cause of the plaintiff's injuries.[2] At trial, the plaintiff through her testimony, the

---

[2] A.   Negligence
  Ms. Patton brings a cause of action for negligence against Mr. Cusano. To prevail on her negligence cause of action, Ms. Patton must prove
   (1) Mr. Cusano was negligent,
   (2) that Ms. Patton suffered injury and
   (3) that Mr. Cusano's negligence was the proximate or legal cause of that injury.

3

admission of Medical Reports and Dr. Donald Weaver's videotape testimony claimed the following injuries: multiple contusions and abrasions on head, body and limbs, including a large welt on the head over the occipital lobe; loss of consciousness; right shoulder injury including bi-lateral shoulder pain; neck injury including posterior disc bulge at C6-7, spondylitic changes at C5-6 and left sided C6 radiculopathy; aggravation of a previously asymptomatic back and neck condition; thoracic injury including disc protrusion at T3-4, probable right sided perineural cysts at T6-7; aggravation of a pre-existing lower back condition; chronic pain syndrome; considerable weight gain; vertigo, blurred vision; cramping in right hand along with bi-lateral hand pain; post traumatic stress disorder along with pain disorder associated with psychological factors; aggravation of a pre-existing psychological condition; anxiety and insomnia

    Prior to rendering their verdict the jury was given the law regarding the burden of proof.[3] The burden of proving this case by a preponderance of the evidence

---

See, Nevada Pattern Jury Instruction, Civil , § 4.02 (1986).

[3] Burden of Proof
In any civil action, such as this one, the party bringing the action assumes the burden of proof with respect to any fact or issue, including the matter of damages. When a party in a civil action has the burden of proof as to any fact or issue, the fact or issue must be proven, if at all by a fair preponderance of the evidence. A "preponderance of the evidence" means the better evidence; the evidence having the greater weight; the more convincing force in mind. The better evidence is evidence which, in your sound judgment, is more credible; the more reasonable. If it happens that the evidence as any fact or issue is in balance so that you cannot say that it inclines either one way or the other, there would be no fair preponderance of the evidence as to that fact or issue and you would find that it has not been proven. If, however, the evidence simply inclines in favor of the fact or issue to be determined, then you would find that such a proposition had been proven by a "preponderance of the evidence."  CHARGE TO THE JURY

4

clearly rested on the plaintiff and the jury was free to decide that she did not sustain that burden.

During the trial there was an abundance of evidence which clearly supported the defendant's position that prior to the June 23, 2001 Las Vegas incident, the plaintiff was suffering from the exact same injuries she claimed she sustained as a consequence of the defendant's alleged negligence. There was also a lack of medical evidence presented by the plaintiff in support of her claim that the June 23, 2001 incident caused her to sustain additional physical injuries or that it exacerbated any preexisting physical injuries. The jury also heard videotape testimony from Dr. Donald Weaver concerning his opinion that as a consequence of the June 23, 2001 incident the plaintiff suffered Post Traumatic Stress Syndrome. As the court is well aware, the jury had the burden of weighing the credibility of Dr. Weaver's testimony and they could have accepted or rejected his conclusions. Therefore, the jury's determination that the plaintiff, Darla Patton, did not prove by a preponderance of the evidence that the defendant, James Cusano, was negligent, and that his negligence was the legal or proximate cause of the injuries is not egregious; nor does it constitute a miscarriage of justice; nor is it against the weight of the evidence.

**2. There was Sufficient Evidence to Support the Defendant's Claim that Prior to the Las Vegas Incident, the Plaintiff was Suffering from the Exact Same Physical Injuries She Claimed were Caused by the Defendant.**

The plaintiff herself submitted into evidence Dr. Magarita C. Solis' medical records relative to her treatment of the plaintiff in 1990 which clearly illustrate that in September of 1990 the plaintiff was suffering from a severe neck injury and other injuries due to a fall which occurred in 1983. [4]  Dr. Solis' records also clearly illustrate that in 1990 the plaintiff's cervical injury, headaches and shoulder and chest pain had been  "worsening through the years." [5]

The plaintiff also submitted extensive medical records relative to her prior treatment of bi-lateral shoulder pain; neck injury,  thoracic injury, lower back condition and chronic pain syndrome. [6]  This evidence alone could support a conclusion by the jury that prior to the June 23, 2001 incident the plaintiff was suffering from the exact same physical injuries she was claiming were caused by the defendant.

A review of the medical records submitted by the plaintiff relative to her treatment after the Las Vegas incident reveal that none of her treating physicians provided an opinion based upon reasonable medical probability that the plaintiff sustained a new

---

[4] Dr. Solis' medical record 9-2-90, page 1, Plaintiff's Exhibit 20, appended hereto as "Exhibit A."
[5] See, Exhibit A.
[6] Richardson Medical Center MRI cervical 5/24/90, Plaintiff Exhibit 20; Katherine S. Henry, M.D., Plaintiff's Exhibit 21; Geoffrey G. Glidden, M.D., Plaintiff's Exhibit 22; Richard R. Jones, M.D., Plaintiff's Exhibit 23;Luis A. Mince, M.D., Plaintiff's Exhibit 24; Advanced White Rock Physical Therapy, Plaintiff's Exhibit 26; Arlington Memorial Hospital Physical Therapy, Plaintiff's Exhibit 27; Arlington Memorial  Hospital MRI Cervical 6/1/99, Plaintiff's Exhibit 28.

physical injury or an exacerbation of any pre-existing physical injuries due to the June 23, 2001 Las Vegas incident.

The only testimony provided to support of the plaintiff's claim that the Las Vegas Incident caused her additional physical injuries and an exacerbation of pre-existing injuries came from the plaintiff herself. The jury than had to assess the credibility of the plaintiff and they reasonably could have chosen not to believe the plaintiff.

**3. There was Sufficient Evidence to Support the Defendant's Claim that Prior to the Las Vegas Incident, the Plaintiff was Suffering from the Exact Same Psychological Injuries She Claimed Were Caused by the Defendant.**

In support of her claim that she sustained new psychological injuries and an exacerbation of pre-existing psychological injuries as set forth above, the plaintiff, played for the jury the videotape of Dr. Weaver's testimony. During the direct examination of Dr. Weaver he testified that in the 1990s he had diagnosed the plaintiff with generalized anxiety disorder and major depressive disorder. On cross-examination, Dr. Weaver changed his testimony and testified that after reviewing his 1993 treatment notes he was also treating the plaintiff nearly every session for Post Traumatic Stress Disorder caused by the death of her first husband. He went on to testify that he considered the death of her first husband to be the pivotal trauma in the plaintiff's life.

As noted previously, the plaintiff claimed that as a consequence of the Las Vegas incident she sustained Post Traumatic Stress Disorder and at trial she testified that this condition made her fearful of the world. Dr. Weaver, on cross-examination, testified that

7

as early as March of 1994, the plaintiff's psychological condition made the plaintiff fearful the world.

Also on cross-examination, Dr. Weaver was questioned about what criteria he used to diagnose the plaintiff with Post Traumatic Stress Disorder after the Las Vegas incident and he testified that she met the DSM- IV[7] criteria including the requirement that the plaintiff had to have sustained "serious injury." On direct examination, Dr. Weaver testified that he was not a medical doctor and he could not give a medical opinion as to whether the plaintiff sustained a "serious injury." When Dr. Weaver was questioned on cross examination he testified that the plaintiff met the "serious injury" requirement due to the plaintiff's subjective appraisal of the incident. This is significant because the plaintiff admitted at trial that she gave a different version of the incident to her doctors than she did at the time of trial and that was due to the fact she had not viewed the surveillance tape at the time she spoke with her doctors.

The change in Dr. Weaver's testimony on cross examination, in which he opined that prior the Las Vegas incident the plaintiff was suffering from Post Traumatic Stress Disorder due to the death of her first husband and that he based his post incident diagnosis on the subjective appraisal of the incident given to him by the plaintiff, which the jury could have accepted or rejected, provided the jury with sufficient information to conclude that the Las Vegas incident did not cause the plaintiff to sustain any additional psychological injuries or an exacerbation of any pre-existing psychological injuries.

---

[7] Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition. Washington, DC, American Psychiatric Association, 1994.

8

**4. There was Sufficient Evidence to Support the Defendant's Claim that Prior to the Las Vegas Incident, the Plaintiff was Suffering from the Exact Same Physical and Psychological Injuries She Claimed Were Caused by the Defendant Due to the Fact She Filed a Social Security Claim 39 Days After the Las Vegas Incident Claiming the Same Injuries She Alleged were Caused by the Defendant.**

The plaintiff submitted into evidence her Social Security Disability Evaluation which included the Social Security Administration Decision.[8] On page one of the decision it is noted that: " The claimant alleges disability beginning August 1, 1999 due to musculoskeletal, visual, psychiatric, and neurological condition." [9] The plaintiff submitted her Social Security Claim thirty nine days after the Las Vegas incident for the same conditions she claimed were caused by the defendant and according to the Social Security Administration's Decision, she claimed these conditions existed almost one year prior to the Las Vegas incident. That fact that the plaintiff made her Social Security claim thirty nine days after the Las Vegas incident would also support a conclusion by the jury that prior to the June 23, 2001 incident the plaintiff was suffering from the exact same physical and psychological injuries she was claiming were caused by the defendant.

---

[8] Social Security Administration Decision, page 1, Plaintiff's Exhibit 18, appended hereto as "Exhibit B."
[9] See, Exhibit B.

9

### III.    Conclusion

Based upon the foregoing, the defendant, James Cusano respectfully submits that the Plaintiff's Motion for New Trial should be denied and the Defendant's Objection should be sustained because there was sufficient evidence to support the defendant's claim that prior to the Las Vegas incident, the plaintiff was suffering from the exact same physical and psychological injuries she claimed were caused by the defendant. Therefore, the jury has not reached an egregious result, the verdict is not a miscarriage of justice and it is not against the weight of the evidence.

```
BY:_____
    Michael L. McDonnell, Esq.
    700 Stanley Drive
    New Britain, CT  06050-9948
    Telephone: (860) 827-4351
    Facsimile:  (860) 827-4386
    Federal Bar No.: CT 04108
```

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, on March 7, 2005, to:

Joseph M. Porto, Esq.
Parrett Porto Parese & Colwell, P.C.
2319 Whitney Avenue
Hamden, CT 06518

John Michael Parese, Esq.
Parrett Porto Parese & Colwell, P.C.
2319 Whitney Avenue
Hamden, CT 06518

                                                                                    _____
Michael L. McDonnell, Esq.
700 Stanley Drive
New Britain, CT 06050-9948
Telephone: (860) 827-4351
Facsimile: (860) 827-4386
Federal Bar No.: CT 04108

11

# EXHIBIT A

MARGARITA C. SOLIS, M.D., P.A.
*Aerobic, Physical Medicine and Rehabilitation*
*ical Director*



## NORTH DALLAS
### REHAB & PAIN CLINIC

### EVALUATION REPORT ON DARLA PATTON

**CHIEF COMPLAINT:** Neck pain

**HISTORY OF PRESENT ILLNESS:** Ms. Darla Patton is a 42-year old white woman, seen on 9-12-90, who gave a history of an injury to her neck about 7 or 8 years prior to consultation when she fell on ice. At that time, her feet was caught in the ice and apparently she landed on extension in a concrete, near a sidewalk, sustaining neck pain ever since. She described her pain to be predominantly on the left side and intermittently radiating down the shoulders, more of an aching sensation radiating to the anterior neck and upper anterior chest wall. This was further described to be associated by tingling-like sensation with paresthesias along the course of the pain. The pain pattern also radiates down into the upper arm and sometimes, she would experience some swelling-like sensation along the same distribution. She also has had a lot of headaches and lightheadedness. Her headaches are more or less getting worst and crown-like in character. Overall, she states that she has been worsening through the years.

**PAST HISTORY:** Noncontributory with regards to previous injuries, past surgeries and allergic reaction to medication. However, she was diagnosed to have a mitral valve prolapse and currently on Inderal 10 mg. per day. She is currently on Tranxene 3.75 mg.

Laboratory procedure done was a MRI which was taken at Richardson Medical Center.

**PERSONAL AND SOCIAL HISTORY:** Patient is a legal assistant by occupation. She is not engaged in any form of sports activity. She has no current activities but mostly sedentary.

**FAMILY HISTORY:** Noncontributory.

**PHYSICAL EXAMINATION:** On examination, patient appeared to be a well-nourished, well-developed white woman who presented a poor posture with a forward neck type syndrome but otherwise the spine alignment was normal. Range of motion of the neck was normal in all planes but has pain with rotation especially towards to the right and left. Range of motions of the shoulders, elbows and wrists were normal. No lymphadenopathy. Tenderness was exhibited mostly in the scalene muscles particularly the medial. Noted some atrophy of the muscles in the upper scapular area particularly the supra and infraspinatus muscle. There was also some muscle spasms noted in the levator scapulae on the left and tenderness along the splenius capitis bilaterally, left more than right. Neck vessels were negative for bruit on auscultation.

# EXHIBIT B

Case 3:03-cv-01034-AVC   Document 49   Filed 03/07/2005   Page 14 of 15

SOCIAL SECURITY ADMINISTRATION
Office of Hearings and Appeals

## DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| Darla E. Dolginoff<br>(Claimant) | Period of Disability and<br>Disability Insurance Benefits |
| (Wage Earner) | 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<br>(Social Security Number) |

### INTRODUCTION

On August 29, 2001, the claimant filed an application for Disability Insurance Benefits. The claim was denied initially and on reconsideration, and a request for hearing was timely filed on June 26, 2002. A hearing was subsequently held on January 29, 2003 in Dallas, TX. Appearing and offering testimony at the hearing were the following: Sterling Moore, MD, and Betty Feir, PhD, medical experts, and Tammie Donaldson, an impartial vocational expert. The claimant alleges disability beginning August 1, 1999 due to musculoskeletal, visual, psychiatric, and neurological conditions. Mark Huffman represents the claimant in this matter.

The general issue is whether the claimant is entitled to a period of disability and Disability Insurance Benefits under sections 216(i) and 223 of the Social Security Act. The specific issue is whether she is under a disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for Disability Insurance Benefits, there is an additional issue pertaining to insured status. A review of the claimant's earnings record reveals that she has earned sufficient quarters of coverage to remain insured at least through the date of this decision.

### EVALUATION OF THE EVIDENCE

The claimant is a 54-year-old individual with a college degree and past relevant work as an administrative secretary and a paralegal. She has not engaged in substantial gainful activity at any time since the alleged onset date. After the date of alleged onset of disability, the claimant worked for a friend for 2-3 weeks in April and May 2001. She answered phones and earned less